UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------x

VIACOM INTERNATIONAL INC., a
Delaware corporation,

                Plaintiff,

      v.

SPECIAL PRODUCTIONS, INC.
and MICHAEL DAVIDS a/k/a
MICHAEL H. DEMOS,

                Defendants.
------------------------------------------------------------x

07 Civ. 9237 (PKC)

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
DEFAULT JUDGMENT

STATE OF NEW YORK  )
                       : SS.:
COUNTY OF NEW YORK)

      MARCIA B. PAUL, being duly sworn, deposes and says:

      1.    I am a member of the bar of this Court and a partner in the firm of Davis Wright Tremaine LLP, attorneys for plaintiff Viacom International Inc. ("Viacom") in the above-captioned action. I am familiar with all the facts and circumstances set forth herein.

      2.    I submit this affidavit in support of Viacom's application for default judgment against defendants Special Productions, Inc. ("Special Productions") and Michael Davids a/k/a Michael H. Demos ("Davids"), pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Local Civil Rule 55.1 and 55.2 of the Local Rules of the United States District Court for the Southern District of New York, and Judge P. Kevin Castel's Individual Rules for Default Judgments.

### DEFENDANTS' DEFAULT

      3.    This action was commenced by the filing of the complaint on or about October 15, 2007. The complaint alleges that Special Productions and Davids engaged in

copyright infringement, trademark infringement, trademark dilution, unfair competition and deceptive acts under federal, New York, Florida and Massachusetts law through (i) their preparation and performance of and offering to license unauthorized derivative works of plaintiff's copyrighted works; (ii) the fabrication, reproduction, rental and offering to rent of counterfeit costumes; and (iii) contracting to provide and/or inducing the provision of unauthorized appearances of defendants' characters at live events in the counterfeit costumes. A true and correct copy of the complaint is annexed hereto as Exhibit A.

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over all other claims asserted under 28 U.S.C. § 1367. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

5.  Defendant Davids is not an infant nor, to the best of my knowledge, an incompetent.

6.  On October 15, 2007, the Clerk of this Court issued a Summons for defendants. Service was perfected on defendants only after several fruitless attempts. On October 17, 2007, Special Productions was served with the summons and Complaint by leaving two copies of the summons and Complaint at the offices of the New York Secretary of State in Albany. On October 25, 2007, Davids was served with the summons and Complaint by affixing a copy of the summons and Complaint to the door of Davids' place of business at Special Productions, Inc., 1133 Broadway, suite 706, New York, New York and mailing a copy of the same to the same address. A true and correct copy of the Summons and the Certificate of Service, filed with this Court on November 15, 2007, are annexed hereto as Exhibit B.

7. At a pre-trial conference before Judge P. Kevin Castel on November 30, 2007, Special Productions was ordered to obtain counsel, which counsel was required to make an appearance by December 28, 2007 or defendant corporation would be in default. The individual defendant, Mr. Davids, an officer of defendant corporation, was present at that conference. The Court advised him that while he could appear *pro se*, Special Productions would have to appear by counsel. A true and correct copy of the transcript of that November 30, 2007 conference is annexed hereto as Exhibit C.

8. No counsel for Special Productions having made an appearance by December 28, 2007, the Clerk of this Court issued a Certificate of Default for Special Productions on January 8, 2008. A true and correct copy of the Certificate of Default for Special Productions is annexed hereto as Exhibit D.

9. At a further conference before Judge Castel on January 11, 2008, Davids did not appear. The Court confirmed that no counsel had appeared for Special Productions and invited Viacom to seek default judgment against Special Productions on or after January 21, 2008. A true and correct copy of the transcript of this conference, as served by plaintiff on defendants on January 14, 2008, is annexed hereto as Exhibit E.

10. At that same January 11, 2008 conference, Davids was ordered to file an answer on or before February 8, 2008 or be in default.

11. Davids having failed to answer the complaint by February 8, 2008, the Clerk of this Court issued a Certificate of Default for Davids on February 11, 2008. A true and correct copy of the Certificate of Default for Davids is annexed hereto as Exhibit F.

12. To date, no counsel has appeared for either defendant, and no answer has been served or filed.

## RISK OF ONGOING INFRINGEMENT OF VIACOM'S RIGHTS

13. Since at least 2005, defendants have been on notice that they were violating Viacom's intellectual property rights and yet they have continued their infringing actions.

14. In June 2005, plaintiff became aware that defendants, in violation of the specific terms of its authorization from plaintiff to broker events featuring Viacom costume characters, was promoting such events in its promotional material. It demanded that defendants cease marketing the characters directly to vendors, cease promoting their services by reference to the characters, and remove all reference to the characters from the their promotional material. A true and correct copy of plaintiff's letter to Davids dated June 7, 2005, is annexed hereto as Exhibit G.

15. Defendants continued to facilitate authorized live events pursuant to the express terms of its limited authorization during the first half of 2006. However, in or around September 2006, Special Productions, in contravention of plaintiff's terms, promoted an unauthorized event at a shopping mall featuring the character BLUE from the popular Nickelodeon show BLUE'S CLUES, another Viacom property, in a counterfeit costume. Viacom therefore wrote to Davids demanding that Special Productions cease such unauthorized use of Viacom's intellectual property. Davids responded that it was an isolated event. A true and correct copy of Viacom's letter to Davids, dated September 1, 2006 and his email response dated September 11, 2006 are annexed hereto as Exhibit H.

16. Soon thereafter, in October 2006, plaintiff's vendor advised Davids that in light of increased licensing restrictions, it would be unable to fulfill *any* of Special Productions' requests for character appearances as of January 1, 2007. A true and correct copy of an email from Laura Kaufmann to Davids, dated October 16, 2006, is annexed hereto as Exhibit J.

17. Notwithstanding Viacom's demands and defendants' reassurances, defendants continued to infringe Viacom's rights by publishing promotional materials, targeted in particular to shopping malls, which included the names and images of Viacom's famous characters and which offered to provide unauthorized appearances by Viacom costume characters and unauthorized live shows featuring those characters, costumes, music, etc. True and correct copies of two brochures, prepared and distributed by defendants, entitled "Our Holiday Shows for 2007" and "2007 Costume Character Appearances" are annexed hereto as Exhibit K.

18. In addition, without authorization from Viacom, defendants have also organized and purported to license unauthorized shows and character appearances at shopping malls, including at Swansea Mall, Swansea, Massachusetts (April 28, 2007) and Seminole Towne Center in Florida (May 19, 2007), have promoted these events through materials using Viacom's character names and images, and have in at least one instance provided a counterfeit costume to the event location. True and correct copies of promotional materials for the unauthorized events of April 28 and May 19, 2007 are annexed hereto as Exhibit L.

19. Upon learning in advance of the Swansea Mall and Seminole Towne Center events, on April 26, 2007, counsel for plaintiff wrote to defendants objecting to their unauthorized use of Viacom's intellectual property including the 2007 Holiday Show and Costume Character Appearances brochures, the unauthorized events at Seminole Towne Center and Swansea Mall, and the unauthorized derivative works. On May 18, 2007, Davids sent a letter to counsel for Viacom stating that "we have not been nor will ever be involved in the unauthorized use of MTVN's Characters, music, trademarks and its other intellectual property, including but not limited to contracting for appearances in counterfeit costumes, creation of promotional materials or any other tortuous [sic] interference with the rights of your clients."

True and correct copies of plaintiff's letter to defendants dated April 26, 2007 and defendants' response dated May 18, 2007 are annexed hereto as Exhibit M.

20.  Notwithstanding defendants' letter, on October 11, 2007, Special Productions contacted the Micmac Mall in Nova Scotia, Canada offering to provide appearances by Viacom costume characters and the performance of unauthorized derivative works containing Viacom costume characters in a "Santa's All-Star Christmas: Featuring characters from Nick Jr., Cartoon Network & More!" Because Viacom had not authorized this event and because therefore it had not sent, and would not send, any character costumes to the event location, any costumes Special Productions was offering to provide were, by definition, counterfeit and any events incorporating those characters were unauthorized derivative works. In addition, the October 11 faxed solicitation includes the unauthorized use of Viacom characters' names and images, and offers free "Dora" or "SpongeBob" appearances to consumers who contract for Special Productions' events in 2008. Viacom has no way of knowing how many event locations have contracted with Special Productions into 2008 as a result of such brochures. A true and correct copy of the faxed solicitation sent by Special Productions to Micmac Mall in Nova Scotia, Canada on October 11, 2007 is annexed hereto as Exhibit N.

21.  Because Davids and Special Productions have continued to violate Viacom's rights, and, without the requested injunctive relief, are likely to to do so again, an injunction against future violations is warranted.

### ATTORNEYS FEES

22.  As a result of defendants' default and their willful infringement of Viacom's copyrights and trademarks, plaintiff is entitled to its reasonable attorneys fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

23. This firm, Davis Wright Tremaine LLP, represented plaintiff in this action. The lawyers who worked on this matter at the firm were myself an associate, Christopher J. Robinson, with the support of paralegals.

24. Mr. Robinson and I are experienced intellectual property litigators with extensive substantive expertise in copyright law. Biographical information on each of us is annexed hereto as Exhibit O.

25. The work we performed in connection with the case was quite substantial. On several occasions, last minute efforts by Mr. Davids offering empty assurances and promised explanations delayed the timely completion of the complaint. We encountered some difficulty in serving defendants because Mr. Davids had been evicted from his last known place of residence and process servers were unable to locate anyone at Special Productions' office. Furthermore, Viacom incurred additional expenses related to Mr. Davids' ultimately false assurances concerning representation for Special Productions.

26. Annexed as Exhibit P is a true and correct copy of invoices of work conducted by this firm on behalf of Viacom in connection with this action from June 2007 (on which date we began work on the complaint) through January, 2008. These invoices total $33,743.50 in fees and $3,033.90 in allowable costs, not counting time spent on this application for attorneys' fees. The total attorney fees and costs sought on this motion is $36,777.40.

27. Each month prior to sending invoices to clients, the primary billing attorney at Davis Wright Tremaine – in this case me – reviews the invoice. If it appears that Davis Wright Tremaine attorneys or staff took too long to accomplish tasks in this matter, such time documented by those persons and the resulting charges are not billed to the client. Therefore,

only time and costs for tasks necessary and reasonable to litigate this matter were billed to Viacom.

28.  Davis Wright Tremaine reviews the billing rates charged by both partners and associates on an annual basis. The firm's Chief Financial Officer compares the fees charged in all offices of Davis Wright Tremaine with fees charged by other comparable firms in the city or region in which the office is located as those rates are compiled in the PriceWaterhouseCoopers Law Firm Billing Rates Survey. Associate and non-attorney rates are set after comparing Davis Wright Tremaine's rates with other comparable firm rates. The current rates for all associates and the rates of non-attorney staff who worked on this matter were set by Davis Wright Tremaine managers using this method. Partners are encouraged to either raise, lower, or leave their rates the same based on whether or not the rates are competitive with those charged by attorneys with comparable experience in other comparable firms as shown in the PriceWaterhouseCoopers survey. I set my hourly rate based on the rates charged by other firms as documented in the surveys, as does Mr. Robinson.

29.  For calendar year 2007, Davis Wright Tremaine billed my time at the hourly rate of $585, and Mr. Robinson's time at an hourly rate of $365. For the calendar year 2008, those rates are $610 and $395 respectively. Those standard hourly rates are significantly lower than those charged by attorneys with comparable experience in other comparable firms in this geographical area. In addition, in the case of Viacom, Davis Wright Tremaine has billed our time on this matter at a lower, discounted rate in 2007 of $497.25 per hour for my time ($518.50 in 2008) and $310.25 per hour for Mr. Robinson's time ($335.75 in 2008). Our standard rates for paralegals range between $180 and $205 per hour, depending on experience level.

30. Based on my experience and familiarity with the rates charged by other attorneys in New York City of similar experience and expertise, it is my opinion that the fees and costs incurred by defendants in this matter are reasonable and appropriate, especially given the difficulties in serving defendants and defendants' prevarication on obtaining counsel for Special Productions, Inc. which caused additional time and expense.

31. For the reasons set forth in the accompanying memorandum of law, I respectfully request that this Court grant this motion, award attorney's fees and the other costs set forth herein to movants, and grant such further relief as this Court may deem appropriate.

*/s/ Marcia B. Paul*
MARCIA B. PAUL

Sworn to before me this
27th day of February, 2008

*/s/ Loretta E. Perry*
Notary Public

LORETTA E. PERRY
NOTARY PUBLIC, State of New York
No. 24-4931617
Qualified in Kings County
Commission Expires August 1, 2010