# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VIACOM INTERNATIONAL INC., a           :
Delaware corporation,                  :      07 Civ. 9237 (PKC)
                                       :
                                       :
                       Plaintiff,      :
                                       :
            v.                         :      COMPLAINT
                                       :
SPECIAL PRODUCTIONS, INC.              :
and MICHAEL DAVIDS a/k/a               :
MICHAEL H. DEMOS,                      :
                                       :
                       Defendants.     :
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff Viacom International Inc. ("Viacom"), by and through its undersigned counsel, as

and for its complaint against defendants Special Productions, Inc. and Michael Davids a/k/a

Michael H. Demos, alleges as follows:

## NATURE OF THE ACTION

    1.    This is an action arising out of defendants' unauthorized use and copying of the

famous names and characters "SPONGEBOB SQUAREPANTS", "DORA THE EXPLORER",

"DIEGO", "JIMMY NEUTRON", "RUGRATS", and "THE WILD THORNBERRYS", and the

copyrights, trademarks and service marks associated with each of them, all of which are owned,

controlled, and exploited by Viacom and its subsidiaries and divisions (the "Viacom Properties").

Defendants have extensively provided, sold, licensed or rented services and products and/or

offered to do and advertised and promoted same in interstate commerce, using the Viacom

Properties, including but not limited to:  (i) the preparation and performance of and offering to

license unauthorized derivative works of plaintiff's copyrighted works; (ii) the fabrication,

reproduction, rental and offering to rent of counterfeit costumes that replicate the physical

appearance and dress of these internationally known and much beloved cartoon characters (the "Counterfeit Costumes"); and (iii) contracting to provide and/or inducing the provision of unauthorized appearances of defendants' characters at live events in the Counterfeit Costumes (the "Unauthorized Events"). By reason of defendants' unauthorized and illegal conduct as more fully described hereinafter, plaintiff asserts claims for copyright infringement in derogation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; registered trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; infringement of common law trademarks, unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and under New York statutory trademark dilution (N.Y. Gen. Bus. Law § 360-l); deceptive acts and unfair trade practices under New York law (N.Y. Gen. Bus. Law § 360-o) and Florida law (§ 501.201 *et seq.*); unfair competition under Massachusetts law (Mass. Gen. Law, 93A §§ 2 and 11); and tortious interference with prospective economic advantage.

## <u>JURISDICTION AND VENUE</u>

2.      This Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and over plaintiff's common and state law claims under the doctrine of supplemental jurisdiction, 28 U.S.C. §§ 1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), as defendants reside and do business in this District, and because a substantial part of the events giving rise to the claims asserted in the Complaint occurred in this District.

## <u>THE PARTIES</u>

4.      Plaintiff Viacom is a corporation organized and existing under the laws of the State

NYC 184900v2 0038015-000104

of Delaware, with its principal place of business at 1515 Broadway, New York, New York. Plaintiff is, and has been for many years, a preeminent global media and entertainment company. Among its many varied operations, it is engaged in the business of producing and distributing audiovisual entertainment programs including cable television shows, and exploiting the rights of those properties in this District, the State of New York and throughout the United States. Some of the most renowned and internationally popular of Viacom's cable television shows are the animated children's series, "SPONGEBOB SQUAREPANTS"; "DORA THE EXPLORER"; "GO, DIEGO, GO!"; "THE ADVENTURES OF JIMMY NEUTRON BOY GENIUS"; "RUGRATS"; and "THE WILD THORNBERRYS", all of which are aired and disseminated on the Nickelodeon network (owned and operated indirectly by plaintiff) and elsewhere.

5.     Defendant Special Productions, Inc. ("Special Productions") is a corporation organized and existing on information and belief under the laws of the state of Tennessee and has its principal place of business at 1133 Broadway, #706, New York, New York 10010. It provides entertainment services in the form of event planning and show production nationwide, including shows featuring the appearance of actors in the costumes of well-known cartoon characters at shopping malls, corporate events, and promotional events.

6.     Michael Davids ("Davids") is the Executive Producer of Special Productions and, under the pseudonym Michael H. Demos, its President. Upon information and belief, Davids controls all of Special Productions' activities relevant to this complaint, determines the policies under which Special Productions operates, undertook personally many of the actions set forth below, and profits personally from Special Productions' activities.

3

## BACKGROUND FACTS

### The Viacom Series and Characters

7.      Viacom is engaged, *inter alia*, in the creation, promotion, and distribution of entertainment, news, sports, music and comedy programming on television and on and through various other media.

8.      MTV Networks, a division of Viacom, owns and operates many of the most popular cable television programming services in the world, including MTV, MTV2, VH1, Nickelodeon, Nick at Nite, TV Land, Comedy Central, Spike, Noggin, and CMT: Country Music Television, in addition to its holdings in film and on line.

9.      Nickelodeon is a cable television channel which has produced, acquired, promoted and broadcast programs for 2- to 11-year-old children since its launch in 1979.  It currently serves over 89 million United States households and over 170 million subscribers worldwide  – and reaches tens of millions more through broadcast television and broadband services.  It has been the highest-rated basic cable network in the United States since 1995.  Viacom also owns or licenses Nickelodeon programming to affiliated networks throughout Europe, Africa, Asia and Latin America.

10.      One of the first of Nickelodeon's successful cartoon series, RUGRATS, premiered in 1991 (the "Rugrats TV Series") and was on air through and including September 9, 2005.  The show continues in syndication outside the United States.  Featuring Chuckie, Tommy and Angelica, Phil and Lil, as manic toddlers and babies, RUGRATS are also the subject of several movies, including *The Rugrats Movie* (1998), *Rugrats in Paris: The Movie* (2000) and *Rugrats Go Wild* (2003) which were and continue to be available on DVD.

11.      Premiering on Nickelodeon in 1998, THE WILD THORNBERRYS is an original

4

television series (the "Wild Thornberrys TV Series"), which features a fictional family of wildlife documentary film-makers. It currently appears in re-runs daily on Nicktoons Network. The main character, Eliza in pigtails and large glasses, talks to animals, and other family members include Donnie, an adopted boy who was raised by orangutans after his actual parents were killed by poachers. An eponymous movie, *The Wild Thornberrys Movie*, was released by Viacom in 2002 and continues to be available on DVD.

12.    In 1999, Nickelodeon premiered an original television series called "SPONGEBOB SQUAREPANTS" (the "SpongeBob TV Series"), starring an original cartoon character of the same name. SPONGEBOB SQUAREPANTS is a square yellow sea sponge with large eyes and two large, widely spaced teeth. He generally wears a short-sleeved white shirt, red tie, short brown pants, black shoes and white knee socks. He lives in a two-bedroom pineapple in the city of Bikini Bottom in the Pacific Ocean with his pet snail, Gary, works as a fry cook at the Krusty Krab restaurant, and gets into adventures with his friends including PATRICK (a starfish) and Sandy Cheeks (a squirrel).

13.    The SpongeBob TV Series was an instant hit and has run continuously on Nickelodeon since its launch. Within its first month, it became the most highly-rated Saturday morning series for children aged 2-11 among all broadcast and cable television competition. Soon thereafter, it became the most highly-rated children's program in any time slot. The series has now aired in 171 countries worldwide and has been viewed by tens of millions of viewers in the United States and abroad in a total of 25 languages. *The SpongeBob SquarePants Movie*, featuring the SPONGEBOB SQUAREPANTS Character, was released in the United States in 2004 and has now earned an estimated $140 million worldwide.

14.    In 1999, Nickelodeon premiered another original television series called DORA

THE EXPLORER (the "Dora TV Series"), starring an original cartoon character of the same name. DORA is a seven year old Latina girl who embarks on various quests with her friend, Boots the Monkey, despite the efforts of a fox character named Swiper, who attempts to sabotage Dora's success. She sports cropped hair and shorts, and is usually depicted wearing her magic purple backpack.

15.     As in the case of the SpongeBob TV Series, the Dora TV Series has provided extremely popular with young children. It has aired in 125 markets worldwide and has been translated in 24 languages. After six years on the air, the Dora TV Series remains one of the highest rated shows among preschoolers – as many as seven million pre-schoolers a month have watched the Dora TV Series. In addition, Nickelodeon has produced two touring theatrical DORA THE EXPLORER shows featuring live actors – "City of Lost Toys" and "Dora's Pirate Adventure" that have been seen by over three million people.

16.     In 2002, Nickelodeon premiered another original television series entitled THE ADVENTURES OF JIMMY NEUTRON: BOY GENIUS, featuring the original cartoon character of the same name (the "Jimmy Neutron TV Series"), which series aired on Nicktoons Network through November, 2006. JIMMY NEUTRON is a child genius and inventor from the fictional town of Retroville whose adventures feature various complex gadgets of his devising. He is generally dressed in a red T shirt and blue shorts, and he wears his hair in a tall curl.

17.     In 2005, Nickelodeon premiered GO, DIEGO, GO!, an original television series that is a "spin off" of DORA THE EXPLORER (the "Diego TV Series") and stars the original cartoon character Diego Marque, who is the eight year old cousin of DORA. With the help of his friends including his sister Alicia, Diego operates an Animal Rescue Center in the rainforest. He is generally depicted with black hair, wearing a white vest, blue shirt and shorts.

NYC 184900v2 0038015-000104

18.    The Diego TV Series has also been very popular. It has aired in many markets worldwide and has been translated into multiple languages. A number of extended-length adventures have been released on DVD, including *Go Diego Go! – The Great Jaguar Rescue* (2005), *Go Diego Go! – Diego Saves Christmas!* (2005), and *Go Diego Go! – Underwater Mystery* (2007). In addition, on February 1, 2007, Nickelodeon launched a theatrical live show entitled "Go Diego Go! – The Great Jaguar Rescue", which is currently touring major venues in the United States.

**Viacom's Intellectual Property Rights in the SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, DIEGO, JIMMY NEUTRON, RUGRATS, and THE WILD THORNBERRYS Names and Characters**

19.    The SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, DIEGO, JIMMY NEUTRON, RUGRATS, and THE WILD THORNBERRYS characters (together, the "Characters") are wholly original works. All rights in and to the Characters are owned by Viacom and are sufficiently delineated in each of the episodes of the respective SpongeBob TV Series, Dora TV Series, Diego TV Series, Jimmy Neutron TV Series, Rugrats TV Series and Wild Thornberrys TV Series (together, the "TV Series") to be entitled to and to have independent copyright protection. They are an extremely valuable intellectual property, and Viacom has at all times taken steps to preserve, protect, and enforce its intellectual property rights in these Characters.

20.    Since the origin of the TV Series, Viacom has owned and continues to own all right, title and interest in and to the SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, GO, DIEGO, GO!, JIMMY NEUTRON, RUGRATS and WILD THORNBERRYS names and the TV Series, including all copyright and trademark interests therein.

21.    Viacom also co-owns the copyrights in the various movies (the "Movies") featuring

7

NYC 184900v2 0038015-000104

the Characters and also co-owns the copyrights in the authorized live touring shows featuring the Characters (the "Shows"), including the scripts, songs and incidental music, and costumes (collectively, the Characters, names, TV Series, Movies and Shows are referred to herein as the "Viacom Properties").

22.    Viacom has complied in all respects with the Copyright Act of 1976, and has secured the exclusive rights and privileges in and to the Viacom Properties, which are copyrightable subject matter (the "Viacom Copyrights"). It has received from the Register of copyrights, Certificates of Registration for various works, including the episodes of the TV Series, the Movies, elements of the Shows and various style guides, apparel guides and other books of artwork delineating the Characters. Copies of certain of these registrations are annexed hereto as Exhibit A and a schedule of Viacom's copyright registrations in the Characters, reflecting the Registration Nos. in the U.S. Copyright Office, is annexed hereto as Exhibit B.

23.    Viacom has produced, promoted and distributed the Viacom Properties in strict conformity with the provisions of the Copyright Act of 1976. All necessary renewals and assignments have been duly filed. The Viacom Copyrights are valid and subsisting and in full force and effect.

24.    Viacom also owns trademark registrations and applications worldwide in connection with each of SPONGEBOB SQUAREPANTS; DORA THE EXPLORER; GO, DIEGO, GO!; JIMMY NEUTRON; RUGRATS and WILD THORNBERRYS marks (together, the "Viacom Marks"), including the following federal trademark registrations and applications: (1) "SPONGEBOB SQUAREPANTS", Registration No. 2,355,702 in International Class 41 for entertainment services in the nature of an animated television series; (2) "SPONGEBOB SQUAREPANTS", Registration No. 2,624,278 in International Class 25 for various items of

8

NYC 184900v2 0038015-000104

clothing; (3) an image of SPONGEBOB SQUAREPANTS, Registration No. 3,010,851 in International Class 25 for various articles of clothing; (4) "DORA THE EXPLORER", Registration No. 2,893,599 in International Class 9 for video games; (5) "DORA THE EXPLORER", Registration No. 2,791,106 in International Class 41 for animation via computer network; (6) "DORA THE EXPLORER", Registration No. 2,526,038 in International Class 9 for theatrical or musical video recordings; (7) "DORA THE EXPLORER", Registration No. 2,493,373 for entertainment services in the nature of a television series; (9) "DORA THE EXPLORER", Registration No. 2753440 for numerous items of clothing including "Halloween costumes"; (10) "GO, DIEGO, GO!", Serial No. 78,610,032 for entertainment services in the nature of a television series; (11) "JIMMY NEUTRON BOY GENIUS", Registration No. 2,594,583 (same); (12) "RUGRATS", Registration No. 2,270,380 for television series and live performances by characters; and (13) "THE WILD THORNBERRYS", Registration No. 2,241,818 for television series. Copies of certain of these registrations are annexed hereto as Exhibit C and a complete schedule of Viacom's United States trademark registrations and applications is annexed hereto as Exhibit D.

**Viacom's Exploitation of Its Rights in and to the Viacom Properties**

25.      Viacom is, and has been since the launch of the TV Series, engaged in the business of licensing to others the right to use the Viacom Properties on or in connection with various products and services. Such campaigns are commonplace and well known to the general public and throughout the industry to exploit and foster consumer awareness of a successful entertainment property.

26.      SPONGEBOB SQUAREPANTS is an international phenomenon. It is MTV Networks International's most widely syndicated property, with active licensing programs in 176

NYC 184900v2 0038015-000104

markets worldwide. Viacom has spent over $5 million in a national marketing campaign prominently featuring the SPONGEBOB SQUAREPANTS consumer products alone.

27.    DORA THE EXPLORER is also exceptionally successful, with active licensing programs in 180 markets worldwide. Viacom has spent over $2.5 million in a national marketing campaign prominently featuring the DORA THE EXPLORER name and Character.

28.    GO, DIEGO, GO! is likewise highly successful. There are active licensing programs in many markets worldwide, and Viacom has spent millions of dollars in a national marketing campaign prominently featuring GO, DIEGO, GO! and DIEGO consumer products alone.

29.    JIMMY NEUTRON, RUGRATS, and THE WILD THORNBERRYS are also licensed worldwide and Viacom has spent many millions of dollars in marketing these television series and Characters.

30.    Viacom features the SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, GO, DIEGO, GO!, JIMMY NEUTRON, RUGRATS and WILD THORNBERRYS Properties in an extensive domestic and international licensing and merchandising program. Through its carefully selected licensees, Viacom has manufactured and sold numerous products under the Viacom Marks and Copyrights in interstate commerce. Its many licensees and merchandisers include and have included such nationally known companies as Virgin, Mattel, Wal-Mart, Target, Minute Maid, Johnson & Johnson and Hasbro.

31.    Since their initial use in the TV Series and Viacom's promotion of those series, the Viacom Marks have been widely associated by the public with the Viacom Properties and related merchandise and services, with Viacom as their source, and have acquired secondary meaning. Consumers specifically seek out such merchandise and services featuring these Viacom Marks

NYC 184900v2 0038015-000104

precisely because they are associated with the Viacom Properties.

32.    The Viacom Marks have been used and will continue to be used by Viacom and its licensees on and in connection with their promotional and marketing efforts including use on television, video, film, DVD, collectible merchandise and otherwise.

33.    Since 1997, revenues derived from sales of merchandise sold by Viacom and/or its licensees under and in connection with the Viacom Marks have exceeded approximately $760 million.

## The Fame of the Viacom Marks

34.    Because of the international acclaim and success of the TV Series and Viacom's international promotion, licensing and merchandising of the Series and Characters for over sixteen years, the Viacom Marks are famous throughout the United States and worldwide.

35.    As set forth above, tens of millions of children in the United States, and many more worldwide, tune into Nickelodeon or watch Nickelodeon programming on other stations, and watch the TV Series on a daily or weekly basis.

36.    Many children have had the opportunity to meet the Characters in real life, through the authorized impersonators of the Characters wearing genuine costumes in affiliated amusement parks and theme parks and in other sponsored live appearances; many millions more have attended the authorized live touring shows featuring actors in the roles of the Characters (collectively, the ("Authorized Live Events").

37.    Viacom has vigorously policed the violation of its rights in connection with the Viacom Properties throughout their existence.

## The Costume Character Program

38.    Viacom has purposefully chosen not to license the right to manufacture full

11                    NYC 184900v2 0038015-000104

character costumes based on the Characters. One reason for this is the fear that any such costumes might be used by predators to gain access to and/or the trust of children. It does license Halloween-type costumes for personal use, but those costumes are clearly of a different design and appearance than full character costumes designed for public appearances at Authorized Live Events.

39.    Viacom carefully controls appearances of the Characters at Authorized Live Events. Since about 1991, actors in full Character costumes appear at Authorized Live Events exclusively through Viacom's Costume Character Program ("CCP"). CCP procedures require that requests for live appearances of the Characters be made to CCP by MTV television affiliates. Typically, an MTV cable affiliate will partner with a commercial sponsor, such as a major book store; in return for a commitment to advertise with that affiliate, the affiliate requests CCP to provide one or more Character costumes for an appearance at the sponsor's location. Once an event is approved by CCP, an authorized vendor, Scollon Productions, Inc., ships the Character costumes and authorized promotional materials to the sponsor, as well as detailed standards of conduct for actors hired by the sponsor to wear the costumes and for the contents/conduct of the event itself.

40.    Each application to CCP is evaluated on its own merits. Frequency and geographical proximity limitations are employed to protect both the affiliate and its sponsor, as well as Viacom Properties, from overexposure of the Characters or dilution of Viacom's valuable intellectual property.

**Defendants' Efforts to Capitalize on the Fame and Goodwill in the Viacom Properties**

41.    Some time in 2003 or 2004, Michael Davids on behalf of Special Productions contacted Nickelodeon to request that he be authorized to license appearances by the Characters at

NYC 184900v2 0038015-000104

promotional events for individual vendors, namely toy and book stores at shopping malls. CCP informed Davids of its policies, including the requirement that all such requests must be presented to CCP by an MTV cable affiliate, in association with a commercial sponsor and conditioned upon purchase of cable spots on the relevant affiliate. Notwithstanding those policies, CCP advised Davids that Special Productions could participate to the limited extent of acting as a facilitator putting together affiliates and sponsors already known to him for Character appearances, so long as the request to CCP for the appearance was made by an affiliate and was part of the CCP. With Nickelodeon's express authorization in each instance, Special Productions brokered a limited number of events throughout 2004 and 2005 featuring SPONGEBOB SQUAREPANTS, DORA THE EXPLORER, THE WILD THORNBERRYS and other Characters for these vendors, at malls around the United States.

42.     In June 2005, Nickelodeon became aware that Special Productions, in violation of the specific terms of its authorization from Nickelodeon to broker such events, was promoting the Characters in its promotional material. It demanded that Special Productions cease marketing the Characters directly to vendors, cease promoting Special Productions' services by reference to the Characters, and remove all reference to the Characters from the Special Productions' promotional material.

43.     Defendants continued to facilitate Authorized Live Events pursuant to the express terms of its limited authorization during the first half of 2006. CCP provided authorized costumes for each such event.

44.     In or around September 2006, Special Productions, in contravention of the terms of CCP, promoted an unauthorized event at a shopping mall featuring the character BLUE from the popular Nickelodeon show BLUE'S CLUES, another Viacom property, in a Counterfeit Costume.

45.    Viacom therefore wrote to Davids demanding that Special Productions cease such unauthorized use of Viacom's intellectual property.

46.    Soon thereafter, in October 2006, CCP advised Davids that in light of increased CCP restrictions, it would be unable to fulfill *any* of Special Productions' requests for Character appearances as of January 1, 2007.

47.    Despite the above warnings and objections, defendants have continued to violate Viacom's intellectual property rights by, *inter alia*, offering for sale and selling entertainment services in association with the Viacom Properties and incorporating Counterfeit Costumes after January 1, 2007 without authorization or license.

48.    For instance, defendants have published and distributed a brochure entitled "Our Holiday Shows for 2007", clearly designed to solicit shopping malls which describes a live show developed and written by defendants entitled "Santa's All Star Christmas" featuring such Viacom Characters as SPONGEBOB SQUAREPANTS and DORA THE EXPLORER, and an unauthorized performance of Viacom's copyrighted music from the SpongeBob TV Series. That brochure includes images of those Characters. Viacom did not authorize the use of Viacom Properties in this unauthorized derivative work, nor did it authorize the events and services the brochure promotes.

49.    Defendants also published and distributed another brochure entitled "2007 Costume Character Appearances" which features photographs of the Characters SPONGEBOB SQUAREPANTS and DORA THE EXPLORER on the cover. An interior page, entitled "Group #3: The Nickelodeon Line-Up", offers appearances by the following Nickelodeon characters for $3,900 per Character:    DORA THE EXPLORER; SPONGEBOB SQUAREPANTS and PATRICK; JIMMY NEUTRON; CHUCKY, TOMMY and ANGELICA (RUGRATS); ELIZA

NYC 184900v2 0038015-000104

and DONNIE (THE WILD THORNBERRYS). The page reproduces the names of the Characters, their copyrighted images, the copyrighted name and logos of the TV Series, and photographs of some of the Character costumes. On a later page entitled "Live Shows", defendants advertise a show entitled "Kids Are Superstars, Too!" which features interactive songs and activities from, *inter alia*, SPONGEBOB SQUAREPANTS, and it also features an unauthorized "Nickelodeon Trivia Game". Viacom did not authorize the use of Viacom Properties in this brochure, nor did it authorize the events and services it promotes.

50.    Without authorization from Viacom, defendants have also organized and purported to license three twenty-minute shows featuring the Character DIEGO, to be held on May 19, 2007, at a mall owned by the Simon Property Group, Inc. ("Simon") located at Seminole Towne Center in Florida. Defendants describe these unauthorized derivative works as "interactive mall adventures." They were to feature an appearance by the DIEGO Character in costume and include music from the Diego TV Series and a DIEGO coloring/activity area, where participants could win DIEGO merchandise. Upon information and belief, these shows were written by defendants and organized in association with the Simon Kidgits Club, a program of children's entertainment sponsored by Simon in many of the malls it owns and operates throughout the United States.

51.    Likewise, without authorization from Viacom, defendants organized a series of four "meet and greets" featuring DORA THE EXPLORER to be held on April 28, 2007 at the Swansea Mall, Swansea, Massachusetts, owned by General Growth Properties, Inc. ("GPI"). The flyer for these events, which was, upon information and belief, published and circulated in interstate commerce in advance of the scheduled event, includes a copyrighted image of DORA, bearing copyright notice in the name of Viacom. Viacom did not authorize the use of Viacom Properties in this brochure, nor did it authorize the event and services it promotes.

15

NYC 184900v2 0038015-000104

52.    On information and belief, defendants, through their authorized representative in Florida, Ray Grimard, shipped a Counterfeit Costume for the DORA THE EXPLORER Character to the Swansea Mall in advance of the scheduled and announced April 28, 2007 event, expressly for that event.  That Counterfeit Costume was accompanied by a CD marked "Dora Pre-Show Music".

53.    The Counterfeit Costume shipped by defendants to Swansea mall is a crude imitation of a DORA THE EXPLORER Character costume, but is nonetheless substantially, strikingly and confusingly similar to the authorized, copyrighted depiction of the DORA THE EXPLORER Character, bearing cropped black hair and large eyes, orange shorts and lavender shirt.

54.    Upon learning in advance of the Simon and GPI events, on April 26, 2007, counsel for plaintiff wrote to Davids and Special Productions, objecting to their unauthorized use of Viacom Properties including the 2007 Holiday Show and Costume Character Appearances brochures, the Unauthorized Events at Seminole Towne Center and Swansea Mall, and the unauthorized derivative works.  Plaintiff demanded written confirmation by May 3, 2007 that defendants had ceased any and all use of Viacom Properties, a full accounting, and a list of any outstanding events at which the Characters were to appear and/or the Viacom Properties were to be featured.

55.    On May 8, 2007, the Marketing Manager of Special Productions emailed the Marketing Manager of Swansea Mall to request the return of the Counterfeit Costume for the DORA THE EXPLORER Character.

56.    On May 18, 2007, defendants responded to Viacom's cease and desist letter, denying that they had willfully or intentionally infringed Viacom's rights and claiming that they

NYC 184900v2 0038015-000104

had not made any profits from the use of the Counterfeit Costumes or other unauthorized and infringing acts. The defendants promised a full explanation of their actions by Monday May 21, 2007. To date, defendants have not provided any such explanation and have not responded further to any of plaintiff's demands.

57.    Upon information and belief, defendants are continuing to improperly hold themselves out as authorized agents for plaintiff and continue to infringe Viacom Properties. For example, on or about May 15, 2007, Davids informed counsel for plaintiff that he had just returned from Florida, where he was attempting to make arrangements for additional appearances by the Characters. Neither Viacom nor CCP had authorized any such discussions.

58.    Defendants' past and apparently continuing use of the Viacom Properties is wholly unauthorized and constitutes a blatant attempt to capitalize on the immense popularity of the Viacom Copyrights, Marks and Properties for their own individual and corporate financial gain and to plaintiff's irreparable injury.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. § 501, *et seq.*)

59.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

60.    The Viacom Properties contain material which is wholly original to Viacom and copyrightable subject matter under the laws of the United States.

61.    As set forth above, after compliance with the Copyright Act and all other laws governing copyrights, the Copyright Office issued valid and subsisting Certificates of Copyright Registration and/or renewal certificates for Viacom Properties, as reflected in Exhibits A and B hereto.

NYC 184900v2 0038015-000104

62.    Among the exclusive rights which Viacom holds is the right to authorize and/or license the exercise by others of the various copyright rights inherent in the Viacom Copyrights.

63.    Defendants had and has no license to exploit the Viacom Copyrights.

64.    Defendants had access to the Viacom Properties.

65.    Without receiving permission, authorization or license from Viacom, defendants have unlawfully reproduced, performed, displayed, distributed and/or prepared derivative works based on the Viacom Copyrights, in violation of the copyright laws of the United States, as above-described.

66.    Defendants' unauthorized use of the Viacom Copyrights constitutes a wholesale copying and publishing of critical elements of plaintiff's property for commercial profit and exploitation, in violation of the copyright laws of the United States, including but not limited to the following separate and distinct acts of primary copyright infringement:

a.    the unauthorized reproduction of the SPONGEBOB SQUAREPANTS and DORA THE EXPLORER names and images in the brochure entitled "Our Holiday Shows for 2007";

b.    the unauthorized reproduction of the DORA THE EXPLORER, SPONGEBOB SQUAREPANTS and PATRICK, JIMMY NEUTRON, CHUCKY, TOMMY and ANGELICA (RUGRATS), ELIZA and DONNIE (The WILD THORNBERRYS) names, Characters, images, and TV Series logos in the brochure entitled "2007 Costume Character Appearances";

c.    the unauthorized reproduction of the DORA THE EXPLORER name and Character image in the GPI flyer for the April 28, 2007 show at the Swansea Mall; the unauthorized distribution of the SPONGEBOB SQUAREPANTS and DORA THE EXPLORER

18

names and images in the brochure entitled "Our Holiday Shows for 2007";

d.    the unauthorized distribution of the DORA THE EXPLORER, SPONGEBOB SQUAREPANTS and PATRICK, JIMMY NEUTRON, CHUCKY, TOMMY and ANGELICA (RUGRATS), ELIZA and DONNIE (The WILD THORNBERRYS) names, Characters, images, and TV Series logos in the brochure entitled "2007 Costume Character Appearances";

e.    the unauthorized copying of the DIEGO Character costume in the counterfeit DIEGO Character costume;

f.    the unauthorized copying of the DORA THE EXPLORER Character costume in the counterfeit DORA THE EXPLORER Character costume;

g.    the unauthorized distribution of the counterfeit DIEGO Character costume;

h.    the unauthorized distribution of the counterfeit DORA THE EXPLORER Character costume;

i.    the preparation of the unauthorized derivative work "Santa's All Star Christmas" featuring the SPONGEBOB SQUAREPANTS and DORA THE EXPLORER names, Characters, music and costumes;

j.    the preparation of the unauthorized derivative work featuring the DIEGO name, Character, music and costumes; the preparation of the unauthorized derivative work "Kids Are Superstars, Too!" featuring the SPONGEBOB SQUAREPANTS name, Character, music and costumes and the unauthorized "Nickelodeon Trivia Game";

k.    the distribution of the unauthorized derivative work "Santa's All Star Christmas" featuring the SPONGEBOB SQUAREPANTS and DORA THE EXPLORER names, Characters, music and costumes;

NYC 184900v2 0038015-000104

l.    the distribution of the unauthorized derivative work featuring the DIEGO name, Character, music and costumes  the distribution of the unauthorized derivative work "Kids Are Superstars, Too!" featuring the SPONGEBOB SQUAREPANTS name, Character, music and costumes and the unauthorized "Nickelodeon Trivia Game";

m.    unauthorized preparation of a CD containing a copy of music from the DORA THE EXPLORER TV Series.

67.    Defendants knew or should have known of plaintiff's rights in the Viacom Copyrights and willfully and intentionally used the Viacom Copyrights after notice that they were infringing thereupon, notwithstanding that knowledge, as above described.

68.    Upon information and belief, defendants have made substantial profits and/or garnered and collected substantial revenue in connection with their use of the Viacom Copyrights.

69.    As a direct and proximate result of the copyright infringement detailed herein, plaintiff has been and continues to be damaged in an amount presently unknown and to be ascertained at trial.

70.    In the alternative, plaintiff seeks maximum statutory damages for each separate willful act of infringement.

71.    Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement 17 U.S.C. §§ 501 et seq.)

72.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

73.    As set forth above, defendants have offered to provide and have provided entertainment services to retailers at shopping malls in Massachusetts, Florida and throughout the

20

United States, including the unauthorized licensing of events featuring Viacom Properties, the distribution of Counterfeit Costumes for Viacom Characters, and the distribution and promotion of Unauthorized Events that are works derivative of Viacom Copyrights.

74.     Defendants knew, or had reason to know, that these Unauthorized Events, the Counterfeit Costumes, and the promotion and performance of unauthorized theatrical shows by the retailers at the malls, would infringe Viacom's copyrights in the Viacom Properties.

75.     Defendants provided the instruments by which these third parties have infringed Viacom Properties, including but not limited to the Counterfeit Costumes, the DORA music CD, and the DIEGO unauthorized script, and they directly induced such infringement by their actions.

76.     Upon information and belief, defendants have made substantial profits and/or garnered and collected substantial revenue in connection with their use of the Viacom Copyrights.

77.     As a direct and proximate result of the copyright infringement detailed herein, plaintiff has been and continues to be damaged in an amount presently unknown and to be ascertained at trial.

78.     In the alternative, plaintiff seeks maximum statutory damages for each separate willful act of infringement.

79.     Viacom has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Registered Trademark Infringement, 15 U.S.C. § 1114)

80.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

81.     Plaintiff's claim arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for infringement of registered trademarks.

NYC 184900v2 0038015-000104

82.     As detailed above, Viacom holds valid and subsisting trademark registrations for the Viacom Marks, and has used them extensively and continuously, in interstate commerce throughout the United States. The Viacom Marks are arbitrary or at the very least suggestive, and have acquired secondary meaning.

83.     As a direct and proximate result of defendants' above-described sale or license and/or offer for sale or license in interstate commerce, of the SPONGEBOB SQUAREPANTS; DORA THE EXPLORER; GO, DIEGO, GO!; JIMMY NEUTRON; RUGRATS; and THE WILD THORNBERRYS;  names and Marks, on and/or in connection with their services, particularly when coupled with their use of the Counterfeit Costumes and Viacom copyright notices, the relevant purchasing public has been and/or is likely to be confused and deceived as to the origin or source of defendants' products and services, and/or to falsely believe that there is an association or sponsorship between Viacom or its authorized representatives on the one hand, and defendants and their services, on the other.

84.     Defendants' use of the Viacom Marks on and in connection with their infringing products and services, defendants' offering of infringing products and services to the public and advertising therefor, has had and, on information and belief will have, an adverse effect upon Viacom's and its licensees' business in this District, the State of New York and throughout the United States.

85.     The continued distribution of defendants' infringing products and services under and/or in connection with the Viacom name and Marks will cause the Marks to lose their distinctive qualities and will erode the selling power inherent therein.

86.     Despite prior notifications of its infringing conduct, defendants have continued and, on information and belief, will continue to use the Viacom Marks without authorization.  Such

22

actions are intentional and willful.

87.    Defendants used and, on information and belief, continue to use reproductions, counterfeits, copies or colorable imitations of the Viacom Marks with knowledge that the Marks they are using are counterfeit.

88.    Defendants have earned and, on information and belief, will continue to earn, profits as a direct result of their unauthorized use of the Viacom Marks.

89.    Because Viacom cannot control the nature and quality of defendants' services, defendants' infringing activities have had and will continue to have an adverse effect on Viacom's business and reputation in this District, the State of New York and throughout the United States in interstate commerce.

90.    As a direct and proximate result of defendants' intentional actions, Viacom has suffered and will continue to suffer damages in an amount presently unknown and to be determined at time of trial.

91.    Viacom has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Contributory Infringement of a Registered Trademark, 15 U.S.C. § 1114)

92.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

93.    As set forth hereinabove, defendants have offered to provide and have provided entertainment services to retailers at shopping malls in Massachusetts, Florida and throughout the United States, including the unauthorized licensing of events featuring Viacom Properties, the distribution of Counterfeit Costumes for Viacom Characters, and the distribution and promotion of unauthorized theatrical shows featuring the Viacom Marks.

23

94.     Defendants knew or had reason to know that the unauthorized events, including the use of Counterfeit Costumes and the promotion and performance of unauthorized theatrical shows by the retailers at the malls, would infringe Viacom's rights in the Viacom Properties.

95.     Defendants have provided the instruments by which these third parties have infringed Viacom Properties and they have induced such infringement by their actions.

96.     Defendants have earned and, on information and belief, will continue to earn, profits as a direct result of their inducement.

97.     Because Viacom cannot control the nature and quality of defendants' services, defendants' infringing activities and those of the persons and entities they have induced to infringe have had and will continue to have an adverse effect on Viacom's business and reputation in this District, the State of New York and throughout the United States in interstate commerce.

98.     As a direct and proximate result of defendants' intentional actions, Viacom has suffered and will continue to suffer damages in an amount presently unknown and to be determined at time of trial.

99.     Viacom has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a))

100.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

101.    Plaintiff's claim arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for common law trademark infringement and false designation of origin in interstate commerce.

102.    As above stated, Viacom is the owner of all rights in and to the Viacom Marks, which are inherently distinctive as arbitrary and coined terms, or, at the very least, suggestive terms

24

in which Viacom has acquired secondary meaning.

103.    Viacom has used its Viacom Marks on and in connection with a wide variety of goods and services, including, but not limited to, the TV Series, the Movies, the Shows, books, games, toys, costumes and clothing, as well as in Viacom's promotion and marketing of the TV Series, the Movies and the Shows, in interstate commerce throughout the United States and worldwide.

104.    Through Viacom's extensive advertising and promotional activities and merchandising and licensing activities, the Viacom Marks have acquired secondary meaning and are famous marks. Viacom has established extensive goodwill in the Viacom Marks, and they are uniquely associated with Viacom in the minds of the general public.

105.    Defendants have used and, on information and belief, continue to use the Viacom Marks and Properties on and/or in connection with their own costumes and their services.

106.    Defendants' services are targeted to the same consumers as Viacom and its licensees target their Viacom Properties-related services and merchandise.

107.    Because Viacom cannot control the nature and quality of defendants' services, defendants' sale and offering for sale of their infringing services have had and will continue to have an adverse effect upon Viacom's interstate business in this District, the State of New York and throughout the United States.

108.    Defendants' offer for sale and sale of their infringing services are intentionally designed to deceive and have deceived customers and prospective customers into believing that the infringing services are authorized, licensed or otherwise approved by Viacom.

109.    As a direct and proximate result of defendants' actions, the public is likely to be confused as to the origin and source of the infringing services and/or to believe that defendants are

NYC 184900v2 0038015-000104

licensed, sponsored, or otherwise authorized by Viacom to offer the infringing services.

110.    Defendants' blatant and continuing use of the Viacom Marks, despite notifications of such infringing conduct, constitutes willful and intentional infringement and unfair competition.

111.    Defendants have earned, and on information and belief will continue to earn, profits as a direct result of their unauthorized use of the Viacom Marks.

112.    As a direct and proximate result of the willful and wanton conduct of defendants, Viacom has been injured and will continue to suffer damages in this District, the State of New York and throughout the United States in an amount presently unknown and to be determined at trial.

113.    Viacom has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### (False Advertising, 15 U.S.C. § 1125(a))

114.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

115.    Plaintiff's claim arises under Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1) for false advertising.

116.    In connection with the commercial advertising and promotion of defendants' infringing services and products in interstate commerce, the use of the Viacom Marks and the statements made by defendants on their website, in brochures, in print and radio advertising and at various events, expressly link their infringing services and products with the Viacom Properties and Marks.

117.    These statements are designed to and do create the false and misleading impression that Viacom is the source of defendants' authority to promote and sell the infringing services, when

NYC 184900v2 0038015-000104

in truth and in fact Viacom is not, and defendants' actions are wholly unauthorized.

118.    Such use of the Viacom Marks and such statements are material and implicitly false and misleading, in violation of Section 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(2).

119.    Defendants' conduct is willful, deliberate, intentional and in bad faith.

120.    Defendants' false and misleading statements about the source of the infringing services are likely to deceive, and have deceived, consumers and have caused and are likely to cause harm to Viacom.

121.    As a direct and proximate result of defendants' false and misleading statements, Viacom has suffered and will continue to suffer irreparable injury and damages in this District, the State of New York and throughout the United States in an amount presently unknown and to be determined at trial.

122.    Viacom has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### (Trademark Dilution, 15 U.S.C. § 1125(c))

123.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

124.    Plaintiff's claim arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

125.    As set forth above, the Viacom Marks are "famous" marks as defined by 15 U.S.C. § 1125(c)(1)(a) through (h).

126.    Defendants' above-described infringing uses of the Viacom Marks began after the Viacom Marks had become famous.

127.    Upon information and belief, defendants above-described infringing uses, cause and/or are likely to cause dilution of the famous Viacom Marks because plaintiffs are using the

NYC 184900v2 0038015-000104

Counterfeit Costumes in an manner contrary to Viacom policies, and are performing unauthorized derivative works and such uses have blurred and/or tarnished or are likely to blur and/or tarnish the associations of quality that consumers have previously made in connection with the Viacom Marks.

128.    Defendants have earned, and on information and belief will continue to earn, profits as a direct result of their unauthorized use of the Viacom Marks.

129.    As a direct and proximate result of the willful and wanton conduct of defendants, Viacom has been injured and will continue to suffer damages in this District, the State of New York and throughout the United States in an amount presently unknown and to be determined at trial.

130.    Viacom has no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF

### (Trademark Dilution, N.Y. Gen. Bus. Law § 360-l)

131.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove as if the same were fully set forth herein.

132.    Plaintiff's claim arises under N.Y. Gen. Bus. Law § 360-l.

133.    As set forth hereinabove, the Viacom Marks are distinctive.

134.    Defendants' above-described infringing uses of the Viacom Marks were intentional predatory acts which began after the Viacom Marks had become distinctive.

135.    Defendants above-described infringing uses cause and/or are likely to cause actual dilution of the distinctive Viacom Marks because plaintiffs are using counterfeit costumes in an manner contrary to Viacom policies and are performing unauthorized derivative works and such uses have blurred and/or tarnished or are likely to blur and/or tarnish the associations of quality that

NYC 184900v2 0038015-000104

consumers have previously made in connection with the Viacom Marks.

136.    As a direct and proximate result thereof, Viacom is entitled to injunctive relief enjoining and restraining defendants from use of the Viacom Marks.

137.    Viacom has no adequate remedy at law.

### NINTH CLAIM FOR RELIEF

### (Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349-350)

138.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

139.    Defendants acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.

140.    Defendants have earned, and on information and belief will continue to earn, profits as a direct result of their deceptive acts and trade practices.

141.    As a direct and proximate result of the willful and wanton conduct of defendants, Viacom has been injured and will continue to suffer damages in this District, and the State of New York in an in an amount to be ascertained at time of trial.

142.    In the alternative, plaintiff seeks maximum damages in accordance with the statute for each willful violation.

143.    Plaintiff has no adequate remedy at law.

### TENTH CLAIM FOR RELIEF

### (Unfair Competition, Mass. Gen. Law, Chapter 93A, §§ 2 and 11)

144.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

145.    Viacom is engaged in the conduct of trade or commerce throughout the United

NYC 184900v2 0038015-000104

States.

146.    Defendants are engaged in the conduct of trade or commerce in the Commonwealth of Massachusetts.

147.    As set forth above, defendants have, without authorization from Viacom, contracted to provide and have shipped to the Commonwealth of Massachusetts, a Counterfeit Character costume which is confusingly similar to Viacom's DORA THE EXPLORER Character and have published or caused to be published and distributed within the Commonwealth of Massachusetts a promotional flyer advertising an unauthorized appearance by DORA THE EXPLORER including an unauthorized reproduction of the DORA THE EXPLORER name, copyrighted image and Mark.

148.    As set forth above, defendants' use of the Viacom Properties on and/or in connection with the Unauthorized Event has caused and/or is likely to cause confusion as to the source thereof.

149.    Defendants have engaged in unfair and deceptive acts and practices as set forth above, in violation of Sections 2 and 11 of the Massachusetts General Laws, chapter 93A.

150.    As a result of defendants' conduct, plaintiff has incurred damages, and will continue to incur damages.

151.    Defendants' conduct was willful or knowing, and/or at a minimum, immoral, unethical, oppressive and/or unscrupulous.

152.    Plaintiff is therefore entitled to statutory enhancement of its damages up to three, but not less than two, times such amount.

153.    Plaintiff is additionally entitled to its attorneys' fees and costs incurred in this action.

NYC 184900v2 0038015-000104

## ELEVENTH CLAIM FOR RELIEF

### (Deceptive and Unfair Trade Practices, Fla. Stat. 501.204 et seq.)

154.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

155.    Defendants have engaged in unfair methods of competition and unfair or deceptive acts in the conduct of trade and commerce in violation of Chapter 501.204(1), Florida Statutes, by purporting to license to entities located in Florida, without authority of Viacom, live theatrical shows which are unauthorized works derivative of the Viacom Copyrights and which feature Viacom Characters, Copyrights and Marks, by offering to ship to entities in Florida costumes which, on information and belief, are Counterfeit Costumes.

156.    As set forth above, defendants' use of the Viacom Properties on and/or in connection with the unauthorized event has caused and/or is likely to cause confusion as to the source thereof.

157.    By offering to provide and by providing entertainment services, defendants have engaged in trade or commerce in the State of Florida as defined by Chapter 205.203(8), Florida Statutes.

158.    Plaintiff is an interested party as defined by Chapter 205.203(6), Florida Statutes because defendants' unauthorized use of the Viacom Properties in Florida has caused plaintiff to suffer a loss. Plaintiff has been forced to expend considerable resources in defense of its reputation and goodwill by providing at short notice authorized entertainment services to replace the unauthorized services contracted for and promoted by defendants.

159.    Plaintiff is therefore entitled to recover its actual damages, attorney's fees and costs pursuant to Chapter 501.211 (2), Florida Statutes.

NYC 184900v2 0038015-000104

## TWELFTH CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage)

160.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through and including 60 set forth hereinabove, as if the same were fully set forth herein.

161.    Defendants, through the CCP and prior to the institution thereof, have provided Character costumes and authorized promotional materials bearing Viacom Copyrights and Marks to numerous affiliates and retail sponsors, including retail sponsors in malls owned and operated by Simon Property Group Inc. and General Growth Inc. among others, who have partnered to organize promotional events featuring the Characters.

162.    Defendants knew of these business relationships and for a period of time facilitated some of them.

163.    Despite clear notice from Viacom that defendants were no longer authorized to solicit and arrange such partnerships, defendants continued to represent that they had the authority of Viacom to offer to sell and to sell their services featuring the Viacom Properties.

164.    Defendants interfered with these business relationships by providing Counterfeit Costumes for the Characters, performing unauthorized derivative works of Viacom copyrighted works, infringing Viacom Copyrights and using Viacom Marks, all for their own profit, in violation of Viacom procedures and contrary to Viacom's express prohibition.

165.    Plaintiffs have contracted with numerous venues across the United States to provide live performances of its original touring theatrical shows featuring the DORA THE EXPLORER, DIEGO and other Characters.  Both Viacom and the contracting venues have invested a considerable resources in promoting and advertising these performances, which depend for their value on the quality of their production and their exclusivity within a certain geographical

32

NYC 184900v2 0038015-000104

area.

166.    Defendants' unauthorized activities set forth above has, or is likely to cause, damage to plaintiff's reputation as a provider of quality entertainment and to its ability to contract with additional venues for the same services.

167.    As a direct and proximate result of the above-described willful and wanton conduct of defendants, Viacom has suffered and will continue to suffer damages in this District, the State of New York and throughout the United States, in an amount presently unknown and to be determined at trial.

168.    Viacom has no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Viacom requests judgment against defendants, as follows:

A.    For a permanent injunction prohibiting defendants and any of them and/or their officers, directors, agents, servants, employees, licensees and assigns, and all persons firms or corporations acting in concert or participation with them, including but not limited to Ray Grimard and Special Productions Inc. of Florida, a corporation organized and existing under the laws of Florida, from (1) using the SPONGEBOB SQUAREPANTS; DORA THE EXPLORER; GO, DIEGO, GO!; JIMMY NEUTRON; RUGRATS; and THE WILD THORNBERRYS names and the Viacom Marks or any colorable imitations of the Viacom Marks, on and in connection with the manufacture, advertisement, promotion, distribution and/or sale of any goods or services; (2) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, or prospective customers of Viacom's products or services, as to the source of the products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or

NYC 184900v2 0038015-000104

prospective customers, into believing that there is any connection between defendants and Viacom or that defendants are acting under the authority of Viacom; and (3) committing any of the acts which will or are likely to tarnish, blur, or dilute the distinctive quality of the famous and distinctive Viacom Marks;

B.    For a permanent injunction under 17 U.S.C. § 502, prohibiting defendants and their respective officers, directors, agents, servants, employees, licensees and assigns, and all persons, firms or corporations acting in concert or participation with them, from infringing in any manner any of the Viacom Copyrights;

C.    For an order of impoundment pursuant to 17 U.S.C. § 503;

D.    For an award of actual damages plaintiff has sustained as a result of defendants' acts of copyright and trademark infringement, unfair competition and dilution of the Viacom Marks and Properties, pursuant to 17 U.S.C. § 503, 15 U.S.C. § 1117(a), Fla. Stat. Chapter 501.211, and the common law, and a trebling of such damages pursuant to 15 U.S.C. § 1117(b) or Mass Gen Law. Chapter 93A § 11;

E.    For an order requiring defendants to account for and pay over to plaintiff all gain, profits and advantages derived by defendants from its acts of infringement, unfair competition and dilution of the Viacom Marks and Properties, pursuant to 17 U.S.C. § 504, 15 U.S.C. § 1117(a) and the common law;

F.    At plaintiff's election, for an award of statutory damages pursuant to 15 U.S.C. § 1117(c), in an amount not more than $1,000,000 per counterfeit mark for each willful violation thereof.

G.    At plaintiff's election, for an award of statutory damages pursuant to 17 U.S.C. § 504 in the amount of $150,000 for each willful violation thereof.

34

NYC 184900v2 0038015-000104

H.    For an order awarding plaintiff prevailing party attorneys' fees under 17 U.S.C.

§ 505, Fla. Stat. Chapter 501.211, Mass Gen. Law Chapter 93A § 11, and/or by reason of

defendants' egregious acts under 15 U.S.C. § 1117, together with costs and disbursements in this

action;

I.    For prejudgment interest according to law; and

J.    For such other relief as the Court may deem just and proper.


Dated: October 15, 2007

                              Respectfully submitted,


                              DAVIS WRIGHT TREMAINE LLP

                        By: _____
                              Marcia B. Paul (MBP-8427)
                              Christopher J. Robinson (CR-9165)
                              1633 Broadway, 27th Floor
                              New York, New York 10019
                              Tel:      (212) 489-8230
                              Fax:      (212) 489-8340

                              *Attorneys for Plaintiff*
                              *Viacom International Inc.*


NYC 184900v2 0038015-000104